UNITED STATES STEEL CORPORA-
TION, Plaintiff,

v.

UNITED MINE WORKERS OF AMER-
ICA et al., Defendants.

JONES & LAUGHLIN STEEL CORPO-
RATION, Plaintiff,

v.

UNITED MINE WORKERS OF AMER-
ICA et al., Defendants.

BETHLEHEM MINES CORPORATION,
Plaintiff,

v.

UNITED MINE WORKERS OF AMER-
ICA et al., Defendants.

Civ. A. Nos. 70–724, 70–725 and 70–727.

United States District Court,
W. D. Pennsylvania.

Dec. 16, 1970.

See also, D.C., 320 F.Supp. 748.

744

Reed, Smith, Shaw & McClay, S. G. Clark, United States Steel Corp., Thomas E. Ricca, Jones & Laughlin Steel Corp., Pittsburgh, Pa., for plaintiffs.

Lloyd Engle, Jr., Pittsburgh, Pa., Willard E. Owens, Joseph Yablonski, Washington, D. C., Kenneth J. Yablonski, Washington, Pa., for defendants.

## OPINION

GOURLEY, District Judge:

In these civil actions, the matters currently before the Court are Motions to Dismiss or, in the Alternative for Summary Judgment filed on behalf of defendant-Local Unions 762, 1197 and 1148 and individual defendants Edward Monborne and Charles Krawitz, who are Presidents of Local Unions 850 and 1386, respectively.[1] As have been other matters before these, the Motions were consolidated for hearing upon a finding that common issues of fact and law were involved.

In substantially similar Complaints filed in each of the above-captioned Civil Actions, the plaintiffs seek injunctive relief restraining work stoppages and picketing alleged to be in violation of the Collective Bargaining Agreement[2] and damages for the alleged breach of said Agreement, pursuant to Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185.

In their Complaints plaintiffs alleged an existing Collective Bargaining Agreement binding upon the defendants and containing, inter alia, a broad grievance-arbitration provision obligating the parties to submit to specified grievance procedures and ultimately to arbitration, if necessary, any "differences" between the mine workers and mine operators and "any local trouble of any kind." Plaintiffs also alleged that the aforesaid grievance-arbitration provision obligated defendants to refrain from striking over any matter properly subject to the grievance-arbitration provision. It was alleged that strikes or work stoppages had occurred and were occurring, that said strikes or work stoppages arose out of "differences" or "local trouble" properly subject to the arbitration-grievance procedure, and that, consequently, the strikes or work stoppages violated defendants alleged contractual obligation to refrain

1. Local Union 1248 is a defendant in Civil Action 70–724, Local Union 762 is a defendant in Civil Action 70–725, and Local Union 1197, Edward Monborne and Charles Krawitz are defendants in Civil Action 70–727.

2. The relevant Agreement in each Civil Action is the National Bituminous Coal Wage Agreement of 1968.

from such conduct and to submit the matter to the grievance-arbitration procedures. Plaintiffs alleged that they were willing to submit to the aforementioned procedures. Further, plaintiffs alleged that they had suffered and would continue to suffer irreparable harm, that they would suffer more from the denial of an injunction than would defendants from its issuance, and that plaintiffs had no adequate remedy at law.

Requests in each of the Complaints for preliminary injunctive relief were consolidated for hearing and, after the same, the Court entered an order preliminarily enjoining defendants from engaging in the alleged work stoppages. In an order of June 30, 1970, the Court of Appeals for the Third Circuit reversed this Court's order on procedural grounds and remanded the cases for a hearing de novo upon plaintiffs' applications for preliminary injunctions. The de novo hearing commenced on July 9, 1970 but was continued indefinitely upon certain representations and stipulations of counsel for the respective parties.

■■ Certain of the defendants now move to dismiss the Complaints for failure to state a claim upon which relief can be granted and for want of subject matter jurisdiction. Alternatively, summary judgments are sought. In determining whether the Complaints can withstand the Motions to Dismiss, the applicable test is whether the well pleaded facts, accepted as true and considered in the light most favorable to plaintiffs, are sufficient to constitute a valid claim. Sherwin v. Oil City National Bank, 18 F.R.D. 188 (W.D.Pa.1955), aff'd 229 F.2d 835 (3d Cir. 1956); Clement Martin, Inc. v. Dick Corp., 97 F.Supp. 961 (W.D.Pa.1951); Bowles v. Sachnoff, 65 F.Supp. 538 (W.D.Pa.1946). It is "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

Movants assert that the claims for injunctive relief admittedly arise out of a "labor dispute" and that plaintiffs therefore must establish the prerequisite for an injunction under Section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107. Were this the case, the Complaints would fail for want of allegations of such acts of violence on the part of defendants as would constitute "unlawful acts" within the intendment of Section 107(a). Wilson & Co. v. Birl, 105 F.2d 948, 952 (3d Cir. 1939). However, in a recent decision in Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court of the United States has delineated the narrow circumstances in which a claim for injunctive relief, although arising out of a "labor dispute", need not meet the prerequisites of the Norris-LaGuardia Act.

In the *Boys Markets* case, *supra,* the Supreme Court held that the Norris-La-Guardia Act does not preclude a federal district court from enjoining a strike in breach of a no-strike obligation under a collective bargaining agreement. In so deciding, the Supreme Court states, at 253, 90 S.Ct. at 1594:

"Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance. The dissenting opinion in *Sinclair* suggested the following principles for the guidance of the district courts in determining whether to grant injunctive relief—principles which we now adopt:

'A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an in-

junction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity —whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employer will suffer more from the denial of an injunction than will the union from its issuance.' Sinclair Refining Co. v. Atkinson, 370 U.S. [195], at 228, 82 S.Ct., [1328] at 1346, 8 L.Ed.2d 440. (Emphasis in original)"

█ Plaintiffs must allege facts which will entitle them to injunctive relief under Section 301 of the Labor Management Relations Act, despite the Norris-LaGuardia Act. Under *Boys Markets*, the requisite allegations would appear to be (1) that a collective bargaining agreement contains a mandatory grievance or arbitration procedure; (2) that the agreement gives rise to an obligation on the part of the union to refrain from a strike or other concerted activity over a grievance subject to the grievance or arbitration procedure; (3) that the strike or concerted activity sought to be enjoined arises out of a grievance subject to the grievance or arbitration procedure; (4) that breaches of the agreement are occurring and will continue to occur, or have been threatened and will be committed; (5) that the breaches have caused or will cause irreparable injury to the employer; and (6) that the employer will suffer more

from the denial of an injunction that will the union from its issuance.

Reviewing the instant Complaints, the Court finds that each of the aforementioned prerequisites have been met. With respect to the particular requirement that the collective bargaining agreement give rise to a "no-strike" obligation, the Court concludes that the allegations of the instant Complaints are sufficient under Local 174, Teamsters, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), even though the Collective Bargaining Agreement appended to the Complaints contains no express "no strike" provision. However, the Court does not decide at this stage of the proceedings and without evidence upon the question whether such an obligation does arise from the Collective Bargaining Agreement in question.

It is concluded that the Complaints adequately state a claim both for damages and injunctive relief under Section 301 of the Labor Management Relations Act.

█ Movants also contend that Section 301 of the Labor Management Relations Act does not afford plaintiffs subject-matter jurisdiction over defendant Local Unions and defendant officers of Local Unions. The applicable Collective Bargaining Agreement has been executed by defendant United Mine Workers of America and defendant Districts. Defendant Local Unions and defendant officers of Local Union are neither signatories nor formal parties to the Collective Bargaining Agreement. However, this is not an "insurmountable obstacle" to plaintiffs' claims since "(p)arties may agree to become bound by a contract negotiated by other parties." Roadway Express, Inc. v. General Teamsters, etc., Local 249, 330 F.2d 859, 863 (3 Cir. 1964). A cause of action is stated against a local union under Section 301 where there is alleged a collective bargaining agreement between an employer and an international union and conduct on the part of both the international and its local union causing a breach of that

agreement.[3] See Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1961). Also, it has been held that a suit to enforce a collective bargaining agreement can be maintained under Section 301 against officers and members of a union who presumably are neither signatories nor formal parties to the collective bargaining agreement in their individual capacities. Sidney Wanzer & Sons, Inc. v. Milk Drivers Union, Local 753, et al., 249 F.Supp. 664 (N.D. Ill.1966).

Defendants' reliance upon Schatte v. International Alliance of Theatrical Stage Employees and Moving Picture Machine Operators, 84 F.Supp. 669 (S.D. Cal.1949) is misplaced. In that case, the Court held that individual union members who were not formal parties to the collective bargaining agreement were not proper parties to sue on an asserted contract violation. The Court in Schatte, supra, did not determine the converse, whether individual union members could be sued for violation of the collective bargaining agreement. In any event, insofar as the Schatte decision stands for the proposition that individual union members cannot sue under Section 301 for violation of a collective bargaining agreement between an employer and the union, it has been implicitly overruled in Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962) which has held to the contrary.

The Court concludes that Section 301 does afford plaintiffs subject matter jurisdiction over defendant Local Unions and defendant Officers.

■ It is clear, however, that Section 301(b) precludes the recovery of damages from union officers where a union is found liable for violation of a no-strike clause. Atkinson v. Sinclair Refining Co., supra. Although the Supreme Court did not decide in Atkinson, supra, whether such a claim for damages could be maintained under Section 301 against union officers whose actions in causing an illegal work stoppage were unauthorized by the union, there are no allegations in the instant Complaints to the effect that defendant Officers were acting in their personal and nonunion capacity. Accordingly, there can be no recovery of damages against defendant officers under the present Complaints.

■ Movants have requested that the Court consider, in the alternative to dismissal of the Complaints, summary judgment in their favor. In particular, it is contended that no strike was in progress on September 22, 1970, the date upon which the Motions to Dismiss were heard, and that summary judgment therefore should be granted in defendants' favor upon the claims for injunctive relief. At the de novo hearing conducted upon plaintiffs' requests for preliminary injunctions, the parties agreed to an indefinite continuance of the hearing upon certain stipulations and agreements to the effect that the plaintiffs, in good faith, would utilize their best efforts to comply with the Federal Coal Mine Health and Safety Act of 1969 and that counsel for the respective defendants would counsel the officers and membership of defendant-Unions to refrain from any work stoppage or picketing based upon conditions in the mines as they were then known to exist. The Court entered an Order in accordance with these agreements on July 10, 1970. Since plaintiffs' willingness to continue the hearing upon their requests for preliminary injunctions was and remains conditioned upon the faithful execution of the agreements into which the parties entered at the hearing, it is deemed appropriate to retain jurisdiction over the

3. Conversely, Section 301 actions against international unions have withstood motions to dismiss in Jersey Farms Milk Service Inc. v. Amalgamated Meat Cutters (M.D.Tenn.1969), 297 F.Supp. 1098 even though the international was neither a signatory nor named party to the agreement, and in Colonial Hardwood Flooring Co. v. International Union, 76 F.Supp. 493 (D.Md.1948), even though the international was not a signatory to the agreement.

injunctive proceeding at least for the present.

An appropriate Order is entered.

### ORDER

Now, this 16th day of December 1970, it is hereby ordered that defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment be and the same are hereby denied except that, insofar as the Complaints may be regarded as asserting claims for damages against defendant-Union officers based upon an alleged violation of the Collective Bargaining Agreement by defendant United Mine Workers of America and defendant Locals, defendants' Motions to Dismiss are granted with respect to said claims.