**CONSOLIDATION COAL COMPANY, a corporation, Plaintiff,**

v.

**UNITED MINE WORKERS OF AMERICA, LOCAL UNION NO. 6869, an unincorporated association, Defendant.**

**Civ. A. No. 1338.**

United States District Court,
S. D. West Virginia,
Bluefield Division.

Aug. 10, 1973.

Charles A. Tutwiler, of Crockett, Tutwiler & Crockett, Welch, W. Va., and Raymond G. Hasley and Daniel L. Stickler, of Rose, Schmidt and Dixon, Pittsburgh, Pennsylvania, for plaintiff.

M. E. Boiarsky and R. L. Theibert, Charleston, W. Va., and Willard P. Owens and Joseph A. Yablonski, of Washington, D. C., for defendant.

## MEMORANDUM ORDER

K. K. HALL, District Judge.

Plaintiff is engaged in the business of mining and selling bituminous coal, an industry affecting commerce as defined in the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 152(6) and (7). Plaintiff's Pocahontas Fuel Company Division operates the Buckeye mine in Wyoming County, West Virginia. The defendant, Local Union No. 6869 of the United Mine Workers of America, is an unincorporated labor organization representing, for collective bargaining purposes, its members who are employed at plaintiff's Buckeye mine. Production and maintenance workers at the mine are covered by the National Bituminous Coal Wage Agreement of 1971, effective November 12, 1971, until November 12, 1974. The agreement provides procedures for settlement of disputes. Article XVII provides in part as follows:

> Should differences arise between the Mine Workers and the Employer as to the meaning and application of the provisions of this agreement, or should differences arise about matters not specifically mentioned in this agreement, or should any local trouble of any kind arise at the mine, an earnest effort shall be made to settle such differences at the earliest practicable time. . . .

Paragraph 10 of plaintiff's original complaint, filed March 2, 1972, asserts:

> The local, however, has breached the agreement between the parties in that beginning in November 1971, and on a number of occasions to the present time, one or more and, upon occasions, all of its members, have failed and refused to follow the grievance procedure aforesaid, including the duty to continue to work during the settlement of disputes as provided by the agreement.

Plaintiff sought and obtained a temporary restraining order, on March 3, 1972, against defendant, its officers, representatives and members, restraining them from continuance of a work stoppage then existing and from picketing or in any manner interfering with orderly resumption of work and orderly operations at the Buckeye mine. The restraining order was extended but was later vacated on March 20, 1972, upon a showing that the grievance causing the work stoppage had been settled through procedures of the National Bituminous Coal Wage Agreement of 1971.

The complaint further asked for a preliminary and permanent injunction enjoining "defendant Local 6869, its officers, representatives, and members, and all persons acting in concert with them or on their behalf" from continuing work stoppages and interference with operations at plaintiff's Buckeye mine and requiring them to utilize the settlement of disputes procedures written into the 1971 labor agreement for the resolution of grievances, differences, or local trouble at the mine.

Among interim developments, plaintiff filed an amended complaint, a motion for a preliminary injunction, a motion for a permanent injunction, and a motion for partial summary judgment. The motion for partial summary judgment, later amended, was for an adjudication of defendant's liability for monetary losses and damages sustained by plaintiff due to the mine work stoppages claimed to be in violation of the 1971 agreement. The motion contemplated a later hearing on the issue of damages due to plaintiff on account of each breach of the agreement. The claim for damages in the motion is consistent with the prayer for compensatory damages in plaintiff's complaint.

Following Court hearings, commencing on February 20, 1973, on the pending motions for injunction and for partial summary judgment, the action was submitted to the Court for decision on the record, including the testimony and exhibits presented at the hearings, and upon briefs and memoranda submitted by counsel.

The Court's jurisdiction of the action is based on 29 U.S.C. § 185(a). Boys

Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

Upon the record, including the evidence and in consideration of the briefs and memoranda of counsel, four primary and determinative issues emerge:

1. Is the defendant, Local Union No. 6869, bound by the terms of the National Bituminous Coal Wage Agreement of 1971?

2. Does the 1971 agreement include implied no-strike provisions?

3. Is plaintiff's motion for a preliminary or permanent injunction tenable in the absence of a present dispute?

4. Is defendant legally liable for work stoppages in violation of the 1971 agreement?

## LOCAL UNION PROPER PARTY DEFENDANT

■ The local union is a labor organization under provisions of 29 U.S.C. § 185. Parks v. International Brotherhood of Electrical Workers, 314 F.2d 886, 917 (4th Cir. 1963). The constitution of International Union of United Mine Workers of America, introduced as Plaintiff's Exhibit No. 9, in Section 2 of Article III, provides in part:

All Districts, Sub-Districts and Local Unions must be chartered by, and shall be under the jurisdiction of and subject to the law of the International Union and rulings of the International Executive Board.

Article VI of the constitution provides for establishment of local unions. See Monborne v. United Mine Workers of America, 342 F.Supp. 718, 722 (W.D. Pa.1972). While Local Union No. 6869 was not itself a signatory to the 1971 agreement, the applicable law cannot be construed so as to insulate the local union from liability and obligations thereunder. As stated by Chief Judge Bernard T. Moynahan, Jr., in his opinion in United States Steel Corporation v. United Mine Workers of America, reported in 77 L.R.R.M. 3134, at 3135 (E.D.Ky. 1971): .

In Atkinson v. Sinclair Refining Co., 370 U.S. 238, [82 S.Ct. 1318, 8 L. Ed.2d 462] 50 LRRM 2433 (1962) and in United States Steel Corp. v. United Mine Workers of America, 320 F. Supp. 743, 77 LRRM 2308 (W.D.Pa. 1970), the latter case involving the same collective bargaining agreement as involved herein, the Courts held that an . action may be maintained against a local union under 29 U.S.C. 185 although arising from a collective bargaining agreement executed only by the parent union. Obviously it would be totally anomalous to ordinary equity jurisprudence to allow the members of a local union to reap the benefits of an agreement and yet to hold the local union to be beyond an action brought for enforcement of the agreement.

The 1971 agreement was executed by "the International Union, United Mine Workers of America . . . on behalf of each member thereof, as party of the second part, covering all of the bituminous coal mines owned or operated by said first parties", the coal mine operators and employers.

In United States Steel Corporation v. United Mine Workers of America, 320 F.Supp. 743 (W.D.Pa.1970), local unions moved to dismiss an action or in the alternative for summary judgment in a factual situation somewhat comparable to the facts herein involved. At pages 746–747 the Court held:

Movants also contend that Section 301 of the Labor Management Relations Act does not afford plaintiffs subject-matter jurisdiction over defendant Local Unions and defendant officers of Local Unions. The applicable Collective Bargaining Agreement has been executed by defendant United Mine Workers of America and defendant Districts. Defendant Local Unions and defendant officers of Local Union are neither signatories nor formal parties to the Collective Bargaining Agreement. However, this is not an "insurmountable obstacle" to plaintiffs' claims since "(p)arties may

agree to become bound by a contract negotiated by other parties." Roadway Express, Inc. v. General Teamsters, etc., Local 249, 330 F.2d 859, 863 (3 Cir. 1964). A cause of action is stated against a local union under Section 301 where there is alleged a collective bargaining agreement between an employer and an international union and conduct on the part of both the international and its local union causing a breach of that agreement. See Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1961). Also, it has been held that a suit to enforce a collective bargaining agreement can be maintained under Section 301 against officers and members of a union who presumably are neither signatories nor formal parties to the collective bargaining agreement in their individual capacities. Sidney Wanzer & Sons, Inc. v. Milk Drivers Union, Local 753, et al., 249 F.Supp. 644 (N.D.Ill.1966).

## NO–STRIKE PROVISIONS IMPLIED

■ The National Bituminous Coal Wage Agreement of April 11, 1945, contained the following provision: "For the duration of this Agreement no strikes shall be called or maintained hereunder." The 1968 agreement contained the following provision:

## MISCELLANEOUS

1. Any and all provisions in either the Appalachian Joint Wage Agreement of June 19, 1941, or the National Bituminous Coal Wage Agreement of April 11, 1945, containing any "no strike" or "penalty" clause or clauses or any clause denominated "Illegal Suspension of Work" are hereby rescinded, cancelled, abrogated and made null and void.

The 1971 agreement obviously does not affirmatively contain any no-strike provisions.

Actions authorized by 29 U.S.C. § 185(a), must be "for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." For plaintiff to successfully maintain its action, a contract violation by defendant must be established. Paragraphs 9 and 10 of plaintiff's original complaint assert:

9. The collective bargaining agreement aforesaid was entered into in good faith by plaintiff to obtain the regular, uninterrupted and faithful services of the members and future members of said local. In furtherance of said object, defendant promised (or by rule of law is held to have promised) that it would not strike or fail or refuse to work because of any "differences" or "any trouble of any kind", but would settle such matters by final and binding arbitration.

10. The local, however, has breached the agreement between the parties in that beginning in November 1971, and on a number of occasions to the present time, one or more and, upon occasions, all of its members, have failed and refused to follow the grievance procedure aforesaid, including the duty to continue to work during the settlement of disputes as provided by the agreement.

Defendant, in its memorandum and response to plaintiff's reply brief, reasons at length on the lack of bases for and the impropriety of implying no-strike provisions in the 1971 agreement. At pages 10–11 of its memorandum, reference is made to Section 13 of the Taft-Hartley Act of 1947, relating to the right to strike. The language of that section limits the provision to Subchapter II, on National Labor Relations, and is now 29 U.S.C. § 163, which reads as follows:

§ 163. Right to strike preserved

Nothing in this subchapter, except as specifically provided for herein, shall be construed so as either to interfere with or impede or diminish in any way the right to strike, or to affect the limitations or qualifications on that right.

The section obviously does not affect provisions of 29 U.S.C. § 178, under Subchapter III, relating to Conciliation of Labor Disputes and National Emergencies, whereby injunctions against strikes are authorized. Subchapter IV of the Act, relating to Liabilities of and Restrictions on Labor and Management, embracing 29 U.S.C. § 185, here involved, makes no mention of the right to strike or the authority to enjoin strikes.

Counsel for defendant in their memorandum recognize that provisions of Section 4 of the Norris-LaGuardia Act, now 29 U.S.C., § 104, prohibiting restraining orders and injunctions in cases growing out of labor disputes, have been modified by subsequent legislation. Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). At page 250, 90 S.Ct. at page 1592 of the *Boys Markets* case, the Supreme Court holds:

> The literal terms of § 4 of the Norris-LaGuardia Act must be accommodated to the subsequently enacted provisions of § 301(a) of the Labor Management Relations Act and the purposes of arbitration. Statutory interpretation requires more than concentration upon isolated words; rather, consideration must be given to the total corpus of pertinent law and the policies that inspired ostensibly inconsistent provisions. . . .

In Local 174, Teamsters, Chauffeurs, Warehousemen and Helpers of America v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 577, 7 L.Ed.2d 593, at 104–105 (1962), the Court observed:

> Whether, as a matter of federal law, the strike which the union called was a violation of the collective bargaining contract is thus the ultimate issue which this case presents. It is argued that there could be no violation in the absence of a no-strike clause in the contract explicitly covering the subject of the dispute over which the strike was called. We disagree.
>
> The collective bargaining contract expressly imposed upon both parties

the duty of submitting the dispute in question to final and binding arbitration. In a consistent course of decisions the Courts of Appeals of at least five Federal Circuits have held that a strike to settle a dispute which a collective bargaining agreement provides shall be settled exclusively and finally by compulsory arbitration constitutes a violation of the agreement. The National Labor Relations Board has reached the same conclusion. W. L. Mead, Inc., 113 N.L.R.B. 1040. We approve that doctrine. To hold otherwise would obviously do violence to accepted principles of traditional contract law. Even more in point, a contrary view would be completely at odds with the basic policy of national labor legislation to promote the arbitral process as a substitute for economic warfare. See United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

See also Old Ben Coal Corp. v. Local Union No. 1487, United Mine Workers of America, 457 F.2d 162 (7th Cir. 1972).

In Section 1 of the Labor Management Relations Act, 1947, 29 U.S.C. § 141, the Congress has declared the purpose and policy of the legislation in this language:

> Industrial strife which interferes with the normal flow of commerce and with the full production of articles and commodities for commerce, can be avoided or substantially minimized if employers, employees, and labor organizations each recognize under law one another's legitimate rights in their relations with each other, and above all recognize under law that neither party has any right in its relations with any other to engage in acts or practices which jeopardize the public health, safety, or interest.
>
> It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting

commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce.

■ Through judicial decisions, apart from any taint of judicial legislation, the federal courts are obliged to fashion federal law from the policy of our national labor laws. The path the law is to follow is at times not clearly marked, but basic considerations provide judicial guidance. In Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, at 454–455, 77 S.Ct. 912, 916, 917, 1 L.Ed.2d 972 (1957), the Court quotes from Senate Report No. 105 at the 80th Congress concerning the intent and objectives of the statute here primarily involved (29 U.S.C. § 185) as follows:

If unions can break agreements with relative impunity, then such agreements do not tend to stabilize industrial relations. The execution of an agreement does not by itself promote industrial peace. The chief advantage which an employer can reasonably expect from a collective labor agreement is assurance of uninterrupted operation during the term of the agreement. Without some effective method of assuring freedom from economic warfare for the term of the agreement, there is little reason why an employer would desire to sign such a contract.

Consequently, to encourage the making of agreements and to promote industrial peace through faithful performance by the parties, collective agreements affecting interstate commerce should be enforceable in the Federal courts. Our amendment would provide for suits by unions as legal entities and against unions as legal entities in the Federal courts in disputes affecting commerce.

The Court then continues its opinion in this language:

Plainly the agreement to arbitrate grievance disputes is the *quid pro quo* for an agreement not to strike. Viewed in this light, the legislation does more than confer jurisdiction in the federal courts over labor organizations. It expresses a federal policy that federal courts should enforce these agreements on behalf of or against labor organizations and that industrial peace can be best obtained only in that way.

To be sure, there is a great medley of ideas reflected in the hearings, reports, and debates on this Act. Yet, to repeat, the entire tenor of the history indicates that the agreement to arbitrate grievance disputes was considered as *quid pro quo* of a no-strike agreement. . . .

### PRELIMINARY AND PERMANENT INJUNCTIONS

Early in this action, upon a showing to the satisfaction of the Court that local troubles existed at plaintiff's Buckeye mine—local troubles within the arbitration provisions of the 1971 agreement—temporary restraining orders were granted. Rule 65(b), Federal Rules of Civil Procedure. The order of March 3, 1972, contains the following findings and provisions:

2. That the defendant local union, its officers and members, have engaged in an illegal work stoppage since the beginning of the 8:00 A.M. shift on Thursday, March 2, 1972, and said work stoppage continues to exist;

3. That there is danger of immediate and irreparable injury, loss and damage being caused to plaintiff for the reason that the actions of the defendant have caused and will continue to cause a loss of coal production at plaintiff's Buckeye Mine and an inter-

ruption in the ability of the plaintiff to meet its commitments;

IT IS ORDERED that the defendant Local No. 6869, its officers, representatives and members and all persons acting in concert with them or on their behalf and to whom notice or knowledge of this Order shall come are hereby restrained from:

(a) Engaging, or continuing to engage, in work stoppage at plaintiff's Buckeye Mine;

(b) Picketing or in any other manner interfering with the orderly resumption of, or continuation of, operations at plaintiff's Buckeye Mine. . . .

In its original complaint plaintiff sought preliminary and permanent injunctive relief against defendant upon the following verified allegations:

15. Based upon the repeated breaches of the agreement by defendant, more particularly, the frequent illegal work stoppages and failure to follow the settlement of disputes procedure, plaintiff verily believes that such misconduct will likely continue into the future and, if not prevented, would require plaintiff to institute numerous and frequent legal actions without the prospect of obtaining complete and adequate relief.

16. Plaintiff has suffered irreparable harm and injury and will continue to suffer irreparable injury by defendant's past and continuing misconduct and breaches of the agreement. Plaintiff has no adequate remedy at law for defendant's continuing refusal to use the procedures to which the parties agreed in the 1971 Labor Agreement for settling local disputes and defendant's refusal to provide regular and uninterrupted services. Moreover, great injury has been and will in the future be inflicted upon plaintiff should defendant be permitted to disregard the agreement between the parties and continue to breach said agreement and cause loss and damage to plaintiff.

The primary issue, on this submission to the Court, is whether, in the context of this action, a permanent injunction may be granted.

As earlier noted herein, the Norris-LaGuardia Act of 1932 prohibited courts of the United States from issuing restraining orders or temporary or permanent injunctions "in any case involving or growing out of any labor dispute." 29 U.S.C., § 104. That statute remains in full force and effect, although later modified by legislation and interpretations by Supreme Court decisions. In Boys Markets, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, at 252–253, 90 S.Ct. 1583, 1593–1594, 26 L.Ed.2d 199 (1970), overruling Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), the Supreme Court observed and held:

The *Sinclair* decision, however, seriously undermined the effectiveness of the arbitration technique as a method peacefully to resolve industrial disputes without resort to strikes, lockouts, and similar devices. Clearly employers will be wary of assuming obligations to arbitrate specifically enforceable against them when no similarly efficacious remedy is available to enforce the concomitant undertaking of the union to refrain from striking. On the other hand, the central purpose of the Norris-LaGuardia Act to foster the growth and viability of labor organizations is hardly retarded—if anything, this goal is advanced—by a remedial device that merely enforces the obligation that the union freely undertook under a specifically enforceable agreement to submit disputes to arbitration. We conclude, therefore, that the unavailability of equitable relief in the arbitration context presents a serious impediment to the congressional policy favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes, that the core purpose of the Norris-LaGuardia Act is not sacrificed by the limited use of equitable remedies to further this important

policy, and consequently that the Norris-LaGuardia Act does not bar the granting of injunctive relief in the circumstances of the instant case.

In the *Boys Markets* case, *supra*, the Supreme Court records that "the District Court ordered the parties to arbitrate the underlying dispute and simultaneously enjoined the strike, all picketing in the vicinity of petitioner's supermarket, and any attempts by the union to induce the employees to strike or to refuse to perform their services."

The case now before the Court can be readily distinguished from the *Boys Markets* case by two factors: (1) In *Boys Markets* the labor agreement contained an express no-strike provision, and (2) the injunction was granted on a present, existing dispute.

Counsel for plaintiff, in their brief, argue that the "granting or denial of a permanent injunction is properly a matter within the sound discretion of the trial court." They refer to "the strong federal policy of promoting peaceful settlement of labor disputes through arbitration." Reference is made to the repeated illegal work stoppages and to the losses and damages plaintiff has sustained and will sustain in the future unless defendant is permanently restrained. Counsel states "the Courts have held that the mere fact that the last such violation has ceased and that the conduct sought to be enjoined has terminated is not ground for the denial of appropriate injunctive relief."

The record here cites eleven work stoppages at plaintiff's Buckeye mine in 1971 and 1972. A motion filed on July 24, 1973, after submission of the action for decision, shows two additional work stoppages in 1973. Viewed in the light of the clear and explicit arbitration provisions in the 1971 agreement, along with the no-strike provisions impliedly applicable thereto, as herein above detailed, this record is unsightly. However, the language of constitutional laws enacted by the Congress, as interpreted and applied by the Supreme Court, will not permit this Court to right an unsightly record by the exercise of broad discretion in the grant of injunctions to chart a course for the future in labor relations. The holding in the *Boys Markets* decision, *supra*, is a narrow one, as the following language from the opinion 398 U.S. at pages 253–254, 90 S.Ct. at page 1594 discloses:

Our holding in the present case is a narrow one. We do not undermine the vitality of the Norris-LaGuardia Act. We deal only with the situation in which a collective-bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Nor does it follow from what we have said that injunctive relief is appropriate as a matter of course in every case of a strike over an arbitrable grievance. The dissenting opinion in *Sinclair* suggested the following principles for the guidance of the district courts in determining whether to grant injunctive relief—principles that we now adopt:

"A District Court entertaining an action under § 301 may not grant injunctive relief against concerted activity unless and until it decides that the case is one in which an injunction would be appropriate despite the Norris-LaGuardia Act. When a strike is sought to be enjoined because it is over a grievance which both parties are contractually bound to arbitrate, the District Court may issue no injunctive order until it first holds that the contract *does* have that effect; and the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike. Beyond this, the District Court must, of course, consider whether issuance of an injunction would be warranted under ordinary principles of equity—whether breaches are occurring and will continue, or have been threatened and will be committed; whether they have caused or will cause irreparable injury to the employer; and whether the employ-

er will suffer more from the denial of an injunction than will the union from its issuance."

In Old Ben Coal Corp. v. Local Union No. 1487, United Mine Workers of America, 457 F.2d 162 (7th Cir. 1972), the Court of Appeals reversed the District Court which had granted a broad permanent injunction enjoining strikes over future arbitrable grievances. At page 165 is the following language:

> In deciding to issue a broad injunction, including any strike over future disputes subject to the mandatory arbitration procedures, the district court relied on the fact that there had been repetitive work stoppages over local disputes. Were it not for the cautious approach which the existence of the Norris-LaGuardia Act requires in this area, a broad injunction, making contempt remedies available as to future similar instances, may well have been within the sound discretion of the court. Perhaps a broad injunction would be appropriate in some future action should it appear that the Union is unwilling to accept the present adjudication with respect to its rights. In the present case, however, we think the policy of Norris-LaGuardia requires that the injunction should have been limited to the dispute before the court.

 In view of the language of controlling laws and judicial decisions thereon, the Court will decline to grant a permanent injunction on the record in this action. This does not mean that in other cases at other times preliminary and permanent injunctions may not be granted. In proper cases the Court will not hesitate to issue such injunctions and will not hesitate to employ the powers of the judiciary in the enforcement thereof.

## DEFENDANT'S LIABILITY FOR DAMAGES

Plaintiff's motion for partial summary judgment, consistent with its complaint for recovery on account of losses and damages incurred as a result of work stoppages detailed in the record, is for an adjudication and determination of defendant's legal liability for the contract breaches, with a hearing to be scheduled later "on the issue of damages due plaintiff for each such breach." The action to recover damages is based on 29 U.S.C. § 185(b), which provides:

> (b) Responsibility for acts of agent; entity for purposes of suit; enforcement of money judgments.

> Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.*

 Plaintiff supports its motion for partial summary judgment by affidavit and defendant has filed an affidavit in opposition to the grant of partial

---

* A plaintiff is greatly limited in its choice of responsible defendants from whom recovery can be effected for losses and damages occasioned by frequent and sometimes extended illegal work stoppages. The parent union may be without the jurisdiction and effective service of process for in personam judgments against that labor organization may not be readily accomplishable. Under the present law, the individual members of the local union and their assets are immune from enforceable judgments. A plaintiff may incur substantial losses and damages in amounts greatly exceeding the limited assets of the local union, perhaps the only labor organization defendant readily reachable by process and judgment enforcement procedures.

summary judgment. Rule 56(e), Federal Rules of Civil Procedure. The motion is proper procedure on the issue of liability in proper cases. 10 Wright and Miller, Federal Practice and Procedure, § 2736 (1973). To sustain the motion plaintiff has the burden to "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." Rule 56(c).

■ Liability will necessarily be limited to work stoppages due to grievances properly arbitrable under the provisions of the 1971 agreement. When questions arise as to whether a particular grievance is within the terms of the arbitration agreement, "doubts should be resolved in favor of coverage." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). The decision in *Boys Markets, supra,* did not provide guidelines for ascertaining what grievances may be covered by the language of arbitration agreements. See Relias, The Developing Law under Boys Markets, 23 Labor Law Journal 758 (1972). The agreement *may exclude a "colorable claim."* Standard Food Products Corp. v. Brandenburg, 436 F.2d 964 (2nd Cir. 1970). A grievance may be included as one of "arguable arbitrability." Southwestern Bell Telephone Co. v. Communications Workers of America, 454 F.2d 1333, 1336 (5th Cir. 1971). Matters relating to safety may be excluded. Gateway Coal Co. v. United Mine Workers of America, 466 F.2d 1157 (3rd Cir. 1972).

■ In consideration of the entire record, including particularly the affidavit of plaintiff in support of its motion for partial summary judgment and the affidavit of defendant in opposition thereto and the evidence adduced at the hearings herein commencing on February 20, 1973, the Court finds and concludes that defendant breached the 1971 agreement by reason of the work stoppages on the following dates:

1. January 6 and January 7, 1972— The work stoppage precipitated by slowness in processing a mine parking lot grievance—an arbitrable question—constituted a contract violation for which defendant is liable.

2. February 17 and February 18, 1972—Dispute over mine parking lot custodial responsibility and care presented an arbitrable grievance and the work stoppage constituted an agreement violation for which defendant is liable.

3. March 2 and March 3, 1972—Discharge of employee for cause was an arbitrable question and the work stoppage was a violation of the agreement and basis for defendant's liability.

4. April 17 and April 18, 1972— Plaintiff's delayed notice to a working employee that his mother was seriously ill caused indignation of employees and presented an arbitrable question. The work stoppage constituted a contract violation and basis for defendant's liability.

5. August 15 until August 18, 1972 —Plaintiff's failure to have a dispatcher on the first shift presented an arbitrable grievance and the work stoppage was a violation of the agreement for which defendant is liable.

6. October 6 and October 7, 1972— An arbitrable question was presented in this work stoppage involving dispatcher's bossy attitude and the discharge of an employee. The violation is basis for defendant's liability.

■ On these findings and conclusions no genuine issue as to any material fact remains for determination and plaintiff will be entitled to judgment as a matter of law thereon. Under

the agreement defendant will be liable to plaintiff for losses and damages, in amounts to be later ascertained, occasioned by the work stoppages on said dates at plaintiff's Buckeye mine. During the proceedings plaintiff's motion for partial summary judgment was amended to delete the work stoppage on July 27 and July 28, 1972. Defendant is found not legally liable to plaintiff for work stoppages on the following dates:

1. November 15 until November 23, 1971—Refusal to return to work due to lack of adequate notice and communication concerning signing and contents of 1971 agreement may not be classed as a work stoppage violation for which defendant is liable.

2. February 7 and February 8, 1972—Refusal to work because of absence of mine parking lot night watchman to guard against thefts and acts of vandalism incident to employees' parked vehicles is, under the circumstances, not a contract violation and not basis for defendant's liability.

3. June 9, 1972—Employees' late arrival for work caused docking for one-half hour's time, precipitating a spontaneous, irresponsible walkout by employees, not found to be a contract violation for which defendant is liable.

4. September 18 and September 19, 1972—The evidence fails to establish factual bases of any arbitrable question and indicates an irresponsible work stoppage for which defendant is not liable.

5. October 27, 1972—The record provides no satisfactory explanation for this work stoppage and no basis for a contract violation for which defendant may be held liable.

On July 24, 1973, plaintiff filed a Motion to Reopen Hearing on Plaintiff's Motion for Permanent Injunction and Affidavit in Support Thereof, citing additional work stoppages, one on June 15, 1973, and one on July 23, 1973. The motion has been considered but the work stoppages therein cited are not embraced in the motion for partial summary judgment and defendant's liability therefor is not for determination at this time.

In summary, upon the total record, including the evidence presented and in consideration of the briefs and memoranda of counsel, the Court finds and concludes:

1. The Court has jurisdiction of this litigation.

2. Defendant, Local Union No. 6869, is a proper party defendant in the action and is bound by the terms of the National Bituminous Coal Wage Agreement of 1971.

3. The National Bituminous Coal Wage Agreement of 1971 includes by implications no-strike provisions binding on the parties.

4. Plaintiff's motion for a preliminary or permanent injunction, in the context of the action as presented by the record, is not tenable.

5. For the work stoppages in violation of the National Bituminous Wage Agreement of 1971, on the dates as detailed above, defendant, Local Union No. 6869, is liable to plaintiff, Consolidation Coal Company, in such sums and amounts as may be determined at a later hearing thereon.

Accordingly, it is

Adjudged and ordered that the motions of plaintiff, Consolidation Coal Company, for a preliminary injunction and for a permanent injunction be, and they are hereby, denied, and that plaintiff's motion for a partial summary judgment be, and it is hereby, granted in part and denied in part, as herein above detailed.

Counsel are directed to confer on arrangements for a hearing on plaintiff's claim for damages on account of the work stoppages for which defendant is legally liable, as herein determined, and shall give consideration to appropriate means whereby defendant's liability for

the work stoppages of June 15, 1973, and July 23, 1973, as embraced in plaintiff's motion filed herein on July 24, 1973, may be presented for the Court's determination.