**BLAKE CONSTRUCTION COMPANY, INC.**

v.

**LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, et al., Appellants.**

No. 73–1707.

United States Court of Appeals, District of Columbia Circuit.

Argued April 8, 1974.

Decided April 11, 1975.

Appeal from the United States District Court for the District of Columbia (D.C. Civil Action No. 1297–72).

Daniel B. Jordan, Washington, D. C., with whom Samuel Levin was on the brief, for appellants.

Edward R. Levin, Washington, D. C., with whom David W. Rutstein, Washington, D. C., was on the brief, for appellee.

Before ROBINSON and MacKINNON, Circuit Judges, and DAVIES,* United States Senior District Judge for the District of North Dakota.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Blake Construction Company (Blake), the appellee, is a general contractor in the building construction industry. Its operations extend to various parts of the United States. For that reason, in 1957 it negotiated the first of a series of collective bargaining agreements with the Laborers' International Union of North America (the International) broadly defining Blake's relationship with the union's members wherever Blake employed them. In 1971, the parties entered into a new contract,[1] the National Construction Agreement, which specified that wages and working conditions on Blake construction projects would be those established cooperatively by local contractors and labor organizations.

That agreement also included no-strike and no-lockout provisions,[2] and erected a procedure for arbitrating grievances.[3]

In our area, the Laborers' District Council of Washington, D. C. and Vicinity (the Council) and Local Union 74 (the Local), both chartered affiliates of the International, bargain with the local organization of contractors over wages and working conditions for their respective members.[4] Blake is not a party to their contracts, nor is the Council or the Local a signatory to Blake's agreement with the International.

On June 28, 1972, the National Construction Agreement remaining in effect, a dispute arose locally between the Council and certain contractors. Although Blake was not involved in the controversy, union members allegedly absented themselves from, or walked off their jobs at, six Blake construction sites in the area. A Blake official promptly contacted the Council, and Blake's attorneys communicated with the International. It appears that some employees returned to work shortly thereafter, and it is clear that all were back on the job the next working day.

Blake's eventual response to the incident was an action in the District Court[5] for damages for alleged breach of the no-strike provision of the national agreement.[6] Its complaint asserted that the agreement was binding upon the

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d) (1970).

1. The agreement was executed on behalf of the International by its General President and its General Secretary-Treasurer. See note 32, *infra.*

2. Article XIV, § 1, of the agreement provides:

    Except as otherwise provided herein, the parties agree that there shall be no strike or lockout over any dispute or grievance subject to the grievance procedure provided for herein.

3. Article XII, § 1, of the agreement provides in pertinent part:

    All disputes or grievances involving or arising out of the interpretation or application of the provisions of this Agreement, including any disputes over work jurisdiction, shall be settled in the following manner: . . . .

    STEP 3—If, after referral to STEP 2, the dispute or grievance remains unresolved, the matter may then be referred to arbitration by either party, upon written notice to the other.

4. The employers' counterpart of this bargaining arrangement is the Construction Contractors Council. Blake is not a member of that organization and does not participate in its bargaining activities.

5. The defendants were the International, the Council and the Local. The business manager of the Local was also joined as a defendant, but the District Court dismissed the action as to him and no review of that ruling is sought.

6. The District Court's jurisdiction was predicated on § 301(a) of the Labor Management Relations Act, Act of June 23, 1947, ch. 120, tit. III, § 301(a), 61 Stat. 156, 29 U.S.C. § 185(a) (1970).

Council and the Local as constituents of the International, and that representatives of all three organizations had contributed to the work stoppage. The District Court denied the International's motion to stay the suit pending arbitration of its subject matter, and granted Blake a partial summary judgment in effect declaring that the Council and the Local were bound by Blake's agreement with the International.[7] On this appeal[8] by the union parties,[9] we reverse the ruling on the requested stay[10] and affirm the summary judgment.[11] Our reasons now follow.

## I. THE MOTION FOR STAY PENDING ARBITRATION

In Textile Workers Union v. Lincoln Mills,[12] the Supreme Court held that a union is entitled to specific performance of an employer's promise to arbitrate grievances. The Court emphasized the importance of maintaining industrial stability and recognized the significant contribution of arbitration to preservation of peaceful labor-management relations.[13] The Court again stressed these values in the Steelworkers Trilogy,[14] reiterating the wholesome federal policy

---

**7.** Blake Constr. Co. v. Laborers' Int'l Union, Civ. No. 1297-72 (D.D.C. Apr. 13, 1973).

**8.** Since Blake's action, which the International attempted to have stayed pending arbitration proceedings, seeks only monetary damages—historically, legal as distinguished from equitable relief—the denial of the stay is appealable. Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 180–185, 75 S.Ct. 249, 252–254, 99 L.Ed. 233, 238–240 (1955); Shanferoke Coal & Supply Corp. v. Westchester Serv. Corp., 293 U.S. 449, 451–452, 55 S.Ct. 313, 314, 79 L.Ed. 583, 586 (1935); Enelow v. New York Life Ins. Co., 293 U.S. 379, 381–383, 55 S.Ct. 310, 311, 79 L.Ed. 440, 442–443 (1935); Bethlehem Steel Corp. v. Grace Line, Inc., 135 U.S.App.D.C. 81, 84–85 n. 13, 416 F.2d 1096, 1099–1100 n. 13 (1969); Travel Consultants, Inc. v. Travel Management Corp., 125 U.S. App.D.C. 108, 111, 367 F.2d 334, 337 (1966), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967); Teamsters Int'l v. Stillpass Transit Co., 128 U.S.App.D.C. 221, 222 n. 1, 386 F.2d 983, 984 n. 1 (1967). *See also* Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 191–192, 63 S.Ct. 163, 164, 87 L.Ed. 176, 178–179 (1942). And since by ruling on Blake's motion for partial summary judgment the District Court undertook the interrelated and indispensable task of legally identifying the parties bound by the collective bargaining agreement—and consequently those affected by the arbitration provision, and thus by the stay—present review of that ruling is likewise in order. *See* Deckert v. Independence Shares Corp., 311 U.S. 282, 287, 61 S.Ct. 229, 232–233, 85 L.Ed. 189, 193–194 (1940); Pang-Tsu Mow v. Republic of China, 91 U.S.App. D.C. 324, 327, 201 F.2d 195, 198 (1952), cert. denied, 345 U.S. 925, 73 S.Ct. 784, 97 L.Ed. 1356 (1953); Alloyd Gen. Corp. v. Building Leasing Corp., 361 F.2d 359, 363 (1st Cir.

1966); American Chem. Paint Co. v. Dow Chem. Co., 161 F.2d 956, 958 (6th Cir. 1947). *See also* Hurwitz v. Directors Guild of America, Inc., 364 F.2d 67, 70 (2d Cir.), cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966); Taylor v. Cohen, 405 F.2d 277, 283 (4th Cir. 1968).

**9.** In addition to the dismissal of the individual defendant, see note 5, *supra*, the District Court made two rulings which are not attacked on this appeal. One was the denial of a motion to dismiss Blake's complaint pursuant to Fed.R.Civ.P. 12, or alternatively for summary judgment pursuant to Fed.R.Civ.P. 56, on the ground that no contract existed between Blake and any of the union parties on June 28, 1972, and that, as a result, the court had no jurisdiction over the subject matter. The other was the denial of a motion by the International for a summary judgment dismissing the complaint as to it on the ground that it neither authorized nor ratified a strike by Blake's employees within the meaning of the National Construction Agreement.

**10.** See Part I, *infra*.

**11.** See Part II, *infra*.

**12.** 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

**13.** *Id.* at 453–455, 77 S.Ct. at 916–917, 1 L.Ed.2d at 978–979.

**14.** United Steelworkers v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

promoting enforcement of dispute-settlement procedures fashioned by the parties.

To be sure, duty to arbitrate rests on contract, and submission to arbitration is compellable only to the extent that there is agreement to do so.[15] The role of the courts is "confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract,"[16] and the judicial task is limited to construing the agreement for that purpose.[17] But "[a]n order to arbitrate the particular grievance," the Court instructs, "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."[18]

Subsequent to emergence of these doctrinal considerations, a number of federal courts considered the contention that cases, like that at bar, involving an alleged breach of a no-strike covenant are not subject to the same principles.[19]

That question was, however, directly addressed by the Supreme Court in Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International, AFL–CIO,[20] which of course is controlling here. The Court held that even though a no-strike promise is the *quid pro quo* for a promise to arbitrate,[21] the relationship between the two is not so inflexible that one party's violation of the no-strike ban excuses the other party from its contract to arbitrate.[22] Indeed, the obligation to arbitrate survives a breach of the collective bargaining agreement other than an outright repudiation of the promise to arbitrate by the party seeking arbitration.[23]

Blake contends, however, that by the terms of the National Construction Agreement violation of the no-strike clause was not an arbitrable issue. Blake invokes the rule, already mentioned,[24] that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."[25]

---

**15.** Gateway Coal Co. v. UMW, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583, 590 (1974); John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898, 903 (1964); Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 1320, 8 L.Ed.2d 462, 465 (1962); United Steelworkers v. Warrior & Gulf Navigation Co., *supra* note 14, 363 U.S. at 582, 80 S.Ct. at 1352–1353, 4 L.Ed.2d at 1417.

**16.** United Steelworkers v. American Mfg. Co., *supra* note 14, 363 U.S. at 568, 80 S.Ct. at 1346, 4 L.Ed.2d at 1407.

**17.** *See* Engineers Local 150 v. Flair Builders, Inc., 406 U.S. 487, 491–492, 92 S.Ct. 1710, 1713, 32 L.Ed.2d 248, 252 (1972); John Wiley & Sons, Inc. v. Livingston, *supra* note 15, 376 U.S. at 546–547, 84 S.Ct. at 912–913, 11 L.Ed.2d at 902–903; Atkinson v. Sinclair Ref. Co., *supra*, note 15, 370 U.S. at 241, 82 S.Ct. at 1320–1321, 8 L.Ed.2d at 466–467. "[T]he arbitration promise is itself a contract. The parties are free to make that promise as broad or as narrow as they wish." United Steelworkers v. American Mfg. Co., *supra* note 14, 363 U.S. at 570, 80 S.Ct. at 1364, 4 L.Ed.2d at 1432 (Brennan, J., concurring). *See also* United Steelworkers v. Warrior & Gulf Navigation Co., *supra* note 14, 363 U.S. at 581, 80 S.Ct. at 1352, 4 L.Ed.2d at 1417.

**18.** United Steelworkers v. Warrior & Gulf Navigation Co., *supra* note 14, 363 U.S. at 582–583, 80 S.Ct. at 1352–1353, 4 L.Ed.2d at 1417–1418 (footnote omitted). *Accord,* Gateway Coal Co. v. UMW, *supra* note 15, 414 U.S. at 377–378, 94 S.Ct. at 637, 38 L.Ed.2d at 592.

**19.** *E. g.,* Signal-Stat Corp. v. Electrical Workers Local 475, 235 F.2d 298 (2d Cir. 1956), cert. denied, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957); Yale & Town Mfg. Co. v. Machinists Local 717, 299 F.2d 882 (3d Cir. 1962).

**20.** 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962).

**21.** *See* Textile Workers Union v. Lincoln Mills, *supra* note 12, 353 U.S. at 455, 77 S.Ct. at 917, 1 L.Ed.2d at 979.

**22.** Drake Bakeries, Inc. v. Bakery Workers Local 50, *supra* note 20, 370 U.S. at 261, 82 S.Ct. at 1351, 8 L.Ed.2d at 479.

**23.** *Id.* at 262, 82 S.Ct. at 1351, 8 L.Ed.2d at 479–480. *See also* Packinghouse Workers Local 721 v. Needham Packing Co., 376 U.S. 247, 251–252, 84 S.Ct. 773, 776, 11 L.Ed.2d 680, 683–684 (1964).

**24.** See text *supra* at note 15.

**25.** United Steelworkers v. Warrior & Gulf Navigation Co., *supra* note 14, 363 U.S. at 582, 80 S.Ct. at 1353, 4 L.Ed.2d at 1417. See also cases cited *supra* note 15.

Blake then endeavors to escape the import of *Drake Bakeries* by noting that the arbitration clause there involved was broader than the one presented on this appeal.[26]

Much of the language in the *Drake Bakeries* provision, however, is similar to its counterpart in the instant agreement, and we believe the differences that exist are not pivotal. Since the union parties deny any violation of the no-strike clause, Blake's contrary claim clearly generates a dispute, in the words of the arbitration provision, "involving or arising out of the interpretation or application of the provisions of this Agreement." [27] If a controversy over infringement of the no-strike clause had been regarded as so fundamental as to demand special treatment in construing the contract, the parties expectably would have excluded its arbitrability explicitly.[28]

■ We conclude, then, that the arbitration clause of the collective bargaining agreement in this case ranges far enough to encompass the parties' dispute. We perceive nothing in the agreement to indicate an intent that the dispute was not to become subject to the covenant to arbitrate.[29] That the arbitration clause intercepts this dispute seems totally consistent with the federal decisions since *Drake Bakeries*.[30] We hold that a stay of competing judicial proceedings pending arbitration should have been granted.

## II. THE OBLIGATION TO ARBITRATE

■ Our decision concerning the stay necessitates inquiry as to whether the Council and the Local are bound by the National Construction Agreement executed by representatives of the International.[31] If bound, the local parties must of course participate in the arbitration with the International and Blake. The District Court held, on Blake's motion for partial summary judgment, that the agreement is obligatory on both the Council and the Local. We affirm that determination.

**26.** In contrast to the coverage of the clause in the contract under consideration, *see* note 3, *supra*, the provision in *Drake Bakeries* included "all complaints, disputes or grievances arising between [the parties] involving questions of interpretation or application of any clause or matter covered by this contract or any act or conduct or relation between the parties hereto, directly or indirectly." 370 U.S. at 257 n. 2, 82 S.Ct. at 1348 n. 2, 8 L.Ed.2d at 477 n. 2.

**27.** See notes 3, 26, *supra*.

**28.** *See* Drake Bakeries, Inc. v. Bakery Workers Local 50, *supra* note 20, 370 U.S. at 259, 82 S.Ct. at 1349, 8 L.Ed.2d at 478; Howard Elec. Co. v. Electrical Workers Int'l, 423 F.2d 164, 167 (9th Cir. 1970). "Nothing in the agreement indicates an intention to except from [the employer's] agreement to arbitrate disputes concerning the 'interpretation or application' of the agreement any dispute which involves or follows an alleged breach of the no-strike clause. That the no-strike clause does not itself carry such an implication is the holding of *Drake Bakeries*." Packinghouse Workers Local 721 v. Needham Packing Co., *supra* note 23, 376 U.S. at 252, 84 S.Ct. at 776, 11 L.Ed.2d at 684.

**29.** See note 3, *supra*.

**30.** *See* General Dynamics Corp. v. Marine Workers Local 5, 469 F.2d 848 (1st Cir. 1972); ITT World Communications, Inc. v. Communications Workers, 422 F.2d 77 (2d Cir. 1970); Swartz & Funston, Inc. v. Bricklayers Int'l, 319 F.2d 116 (3d Cir. 1963); H. K. Porter Co. v. Steelworkers Local 37, 400 F.2d 691 (4th Cir. 1968); Fluor Corp. v. Carpenters Dist. Council, 424 F.2d 283 (5th Cir. 1970); Jefferson City Cabinet Co. v. Electrical Workers Int'l, 313 F.2d 231 (6th Cir.), cert. denied, 373 U.S. 936, 83 S.Ct. 1539, 10 L.Ed.2d 690 (1963); Minnesota Joint Bd. v. United Garment Mfg. Co., 338 F.2d 195 (8th Cir. 1964); Howard Elec. Co. v. Electrical Workers Int'l, *supra* note 22; Johnson Builders, Inc. v. United Bhd. of Carpenters, 422 F.2d 137 (10th Cir. 1970). Other cases finding no duty to arbitrate have uniformly involved arbitration clauses narrower than the provision in suit. *E. g.,* G. T. Schjeldahl Co. v. Machinists Local 1680, 393 F.2d 502 (1st Cir. 1968) (arbitration agreement limited to employee grievances); Boeing Co. v. UAW, 370 F.2d 969 (3d Cir. 1967) (arbitration provision exclusively for employees' claims); Stillpass Transit Co. v. Ohio Conference of Teamsters, 382 F.2d 940 (6th Cir. 1967) (specific exception for alleged breach of no-strike clause). *See also* H & M Cake Box, Inc. v. Bakery Workers Int'l, 454 F.2d 716 (1st Cir. 1972).

**31.** See note 8, *supra*.

We note initially that the question is not one of power. The International's constitution authorizes it to enter into contracts with employers and to enforce their observance by subordinate bodies and members.[32] We understand, too, that it is common practice in the labor relations field for a national labor organization to bargain with employers on behalf of its local constituents regarding inclusion of arbitration and no-strike provisions.[33] The International's contracting authority undoubtedly contemplates legally binding compacts, and on its face the National Construction Agreement is of that character. It would be anomalous to permit local units to enjoy the benefits of bargaining agreements and yet to rid themselves of the duties concomitantly imposed simply because the agreements are signed only by the parent unions.[34] More fundamentally, a party may be responsible on a contract negotiated and executed by other parties,[35] and here provisions of the International's constitution[36] combine with others in the national agreement[37] to empower the International to commit the Council and the Local to promises to arbitrate.[38]

The question, then, is whether the collective bargaining agreement with Blake, as drawn, actually binds the local affiliates, and the answer depends upon a construction of the agreement. The Council and the Local contend that the District Court's holding in the affirmative is inconsistent with the textual import of the agreement. We think that, on the contrary, the plain language the parties used strongly supports the reading the District Court gave it. The preamble to the contract recites that it was entered into by "the Laborers' International Union of North America, AFL–CIO, for and on behalf of its affiliated Local Unions and District Councils (hereinafter referred to as the 'Union')."[39] The District Court construed "Union" to mean the International and its local affiliates as a single unit, and on that basis the court held that the local subordinates as well as the parent body were bound. This interpretation is buttressed by the explicit declaration in

---

**32.** Article VII, § 2(s) provides:

[The General Executive Board] shall have the power to authorize the General President and General Secretary-Treasurer to enter into national, regional or area agreements with employers or employer associations and the General President is vested with authority to enforce observance of such agreements by affiliated Subordinate Bodies and members and to issue such directions or orders as may be necessary to accomplish such purpose.

Article IX, § 12 provides:

The General President and the General Secretary-Treasurer are jointly vested with authority to enter into National, Regional, and Area Agreements with employers or employer associations. The General President, subject to review by the General Executive Board, is vested with full authority to enforce observance of such agreements and to enforce observance of other lawful agreements made by Local Unions and other Subordinate Bodies; and to enforce observance of other lawful orders pertaining thereto, by Local Unions, other Subordinate Bodies, and members.

**33.** *See* Parks v. Electrical Workers Int'l, 314 F.2d 886, 910–911 (4th Cir.), cert. denied, 372 U.S. 976, 83 S.Ct. 1111, 10 L.Ed.2d 142 (1963).

**34.** *See* Consolidation Coal Co. v. UMW Local 6869, 362 F.Supp. 1073, 1076 (S.D.W.Va. 1973).

**35.** *E. g.*, Roadway Express, Inc. v. Teamsters Local 249, 330 F.2d 859, 863 (3d Cir. 1964); *cf.* Marranzano v. Riggs Nat'l Bank, 87 U.S. App.D.C. 195, 196, 184 F.2d 349, 350 (1950).

**36.** See note 32, *supra.*

**37.** See text and notes *infra* at notes 39–41.

**38.** The same result has been reached in other courts in similar cases. *See* United Packinghouse Workers v. Maurer-Neuer, Inc., 272 F.2d 647 (10th Cir. 1959), cert. denied, 362 U.S. 904, 80 S.Ct. 611, 4 L.Ed.2d 555 (1960); Consolidation Coal Co. v. UMW Local 6869, *supra* note 34; United States Steel Corp. v. UMW, 77 L.R.R.M. 3134 (E.D.Ky.1971); United States Steel Corp. v. UMW, 320 F.Supp. 743 (W.D.Pa.1970). *See also* Atkinson v. Sinclair Ref. Co., *supra* note 15.

**39.** Substantially the same language was considered in United Packinghouse Workers v. Maurer-Neuer, Inc., *supra* note 38, and Consolidation Coal Co. v. UMW Local 6869, *supra* note 34.

the agreement as to the organizational components for which it was made.

Beyond that consideration, other circumstances sustain the same construction. If the term "Union" referred exclusively either to the International or the local affiliates, it would have been unnecessary in particular instances to refer in the body of the agreement specifically to the International or to the local unions and district councils. Such references, however, are made repeatedly.[40] Moreover, the contract is obviously intended to cover relationships other than those between its signers.[41] And it is manifestly unreasonable to assume that Blake or any other employer contemplated a collective bargaining agreement that did not mutually obligate parties with whom Blake would be dealing directly to abide by its terms.[42]

The order appealed from is reversed insofar as it denied a stay pending arbitration, and is affirmed in the other respect challenged here.[43] The case is remanded to the District Court for appropriate action.

So ordered.

---

**40.** The agreement refers specifically to the International in Arts. VI, XIII and XIV; references to the local affiliates are made in Arts. IV, V, VI and VII.

**41.** See Arts. VI, VII, XIV and XV.

**42.** While the agreement contains some provisions purporting variously to bind one or more but not all union parties, the no-strike and arbitration clauses clearly impose joint obligations. The former would have little practical value if the local affiliates, with de facto control over men in the field, were free to bypass the grievance procedure and strike at will. The latter draws the local affiliates, which are vitally concerned with day-to-day administration of the agreement, inextricably into the grievance machinery, of which arbitration is only the last resort. The grievance provision specifies, as Step 1, that "[t]he first attempt to settle any [covered] dispute or grievance shall be made at the job level between the representative of the Local Union and/or District Council involved and the Employer's representative." Step 2, embracing adjustment efforts by representatives of the International and the employer, may be taken only "[i]f such dispute or grievance is not settled at the job level within three (3) days. . . ." The local bodies would hardly have been indulged the first opportunity to resolve "disputes or grievances involving or arising out of the interpretation or application of the provisions of [the] Agreement," see note 3, *supra*, unless they are themselves to be bound by the resolution, which ultimately might require arbitration. Nor is it likely that the International would have tolerated a procedure making possible the final disposition of disputes and grievances locally if only the International is to be affected by the result.

**43.** In granting partial summary judgment in Blake's favor, the District Court's order stated that there was no genuine issue of fact, not only as to the existence of the national collective bargaining agreement binding the Council and the Local as well as the International, but also none as to a work stoppage on June 28, 1972, at Blake construction projects. We are urged to vacate the latter premise, on the ground that the union parties deny that there was such a stoppage, to enable the arbitrator to consider that matter anew. We find no fault in the District Court's recitation. Affidavits supporting Blake's motion alleged failures to report for work and walkouts on the date in question; affidavits for the union parties did not contest those events, but only disclaimed responsibility for them. Like the District Court, we are unable to detect an issue as to whether at least some union members quit work that day. See Fed.R.Civ.P. 56(e). We point out, however, that the court merely appraised the issues for purposes of passing on Blake's motion. See Fed.R.Civ.P. 56(c). That assessment was not a finding of fact that the asserted work stoppage actually occurred. Tygrett v. Washington, No. 72–1876 (D.C.Cir., Oct. 23, 1974). And obviously, since the District Court denied a stay to enable arbitration, it was not an attempt to decide arbitrability.