**NATIONAL ELEVATOR INDUSTRIES, INC. (NEII), on behalf of itself and its member Westinghouse Electric Corp., Elevator Division, Plaintiff,**

v.

**LOCAL NO. 5, INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS, Defendant and Third-Party Plaintiff,**

v.

**INTERNATIONAL UNION OF ELEVATOR CONSTRUCTORS, Third-Party Defendant (two cases).**

Civ. A. Nos. 75–3299, 76–490.

United States District Court,
E. D. Pennsylvania.

Jan. 21, 1977.

Mark S. Dichter, Anthony A. DeSabato, of Morgan, Lewis & Bockius, Philadelphia, Pa., for plaintiff.

Robert C. Cohen, Richard H. Markowitz, of Markowitz & Kirschner, Philadelphia, Pa., for defendant Local No. 5.

Daniel J. Allan, of Quinn, Allan & Raab, Philadelphia, Pa., Patrick C. O'Donoghue, William R. Hayden, of O'Donoghue & O'Donoghue, Washington, D. C., for International Union of Elevator Constructors.

## MEMORANDUM

GORBEY, District Judge.

The National Elevator Industry, Inc. (hereinafter "NEII") is a multi-employer association incorporated under the laws of the State of New York, established to represent for collective bargaining purposes employers in the elevator construction industry. One such employer represented by NEII is Westinghouse Electric Corp., Elevator Division (hereinafter "Westinghouse"). Local No. 5, International Union of Elevator Constructors (hereinafter "Local No. 5") is a local labor organization affiliated with and chartered by the International Union of Elevator Constructors (hereinafter "The International").

NEII, on behalf of its employer-members, and The International, on behalf of its affiliated local unions, negotiate a national collective bargaining agreement (referred to as the "Standard Agreement"), a copy of which is attached as Exhibit A to the complaint in both Action No. 75–3299 and Action No. 76–490, which establishes the terms and conditions of employment for employees covered by the agreement. The Standard Agreement contains a "no-strike/no-lockout" provision (Article XI) as well as a grievance and arbitration clause (Article XV).

NEII, on behalf of Westinghouse, filed grievances under the contract's grievance and arbitration clause claiming that both Local No. 5 and The International had violated the contract's no-strike provision on

the Center Square Project in Philadelphia, Pennsylvania. Damages were sought for injuries allegedly incurred by Westinghouse as a result of the work stoppages. Two separate arbitration proceedings were ultimately held as a result of these grievances. The "East Tower Arbitration" (arising out of an alleged work stoppage on the East Tower of the Center Square Project) was held before Impartial Arbitrator J. Fred Holly, Esquire. The "West Tower Arbitration" (arising out of an alleged work stoppage on the West Tower of the Center Square Project) was held before Impartial Arbitrator Patrick J. Fisher.

In both arbitration proceedings Local No. 5 was found to have violated the no-strike provision of the Standard Agreement and damages were awarded against Local No. 5 for the resulting injuries incurred by Westinghouse. Both Arbitrators concluded that The International had not violated its responsibilities under the Standard Agreement and consequently was not liable for any damages.

Local 5 claims that it was denied the opportunity to participate in the arbitration proceedings and for this reason Local 5 has refused to comply with the awards. The specific reasons, as stated by Local 5, why Local 5 believes it is not bound by the awards are as follows:

(1) The Standard Agreement does not provide for awarding damages by an arbitrator;

(2) The Standard Agreement does not provide for awarding damages or any kind of relief against a local union as opposed to the International;

(3) Despite the clear and undisputed conflict of interest between Local 5 and the International which was brought to the attention of all concerned, including the Arbitrators, only shortly before the hearings commenced, the Arbitrators refused to grant Local 5 a continuance to allow Local 5 to appear separately with its own attorney and to defend its position separately and apart from the International. Local 5 was, therefore, de-

nied the opportunity of participating in the arbitrations and was denied the right of counsel. This egregious denial of due process to Local 5 rendered both arbitration proceedings completely void and unenforceable vis-a-vis Local 5.

These two actions were commenced by NEII pursuant to 29 U.S.C. § 185 to enforce the arbitration awards against Local 5. In each action Local 5 joined The International as a third party defendant alleging that The International is either directly liable to the plaintiffs or is liable to Local 5 if Local 5 is held liable to the plaintiffs. The plaintiffs and The International have each filed motions for summary judgment in each action. Local 5 has filed cross-motions for summary judgment in its favor against the plaintiffs. Since both cases involve the same issues of law and since both involve the same basic facts, the two cases will be decided together.

Initially, Local 5 claimed that it was not a party to the Standard Agreement as it had not signed the Agreement, and therefore it had no liability for any violations of its provisions. I believe that Local 5 has since abandoned this defense, but in the event it has not, I will discuss it briefly.

■ The Standard Agreement was negotiated by NEII and The International. This Agreement states in part in Article I that "The International Union of Elevator Constructors makes this agreement for and on behalf of its affiliated local unions . . . ." The record is replete with facts and proof that Local 5 is one of those affiliated local unions and that Local 5 has in the past and continues today to conduct its day-to-day affairs in a manner wholly consistent with its status as a party to the Standard Agreement. Further, both arbitrators found that Local 5 is a party to the Standard Agreement and therefore subject to its provisions. As was said in a very similar situation in the District of Columbia Court of Appeals in *Blake Construction Co., Inc. v. Laborers' Int. U. of N.A.*:

It would be anomalous to permit local units to enjoy the benefits of bargaining

agreements and yet to rid themselves of the duties concomitantly imposed simply because the agreements are signed only by the parent unions. More fundamentally, a party may be responsible on a contract negotiated and executed by other parties, and here provisions of the International's constitution combine with others in the national agreement to empower the International to commit the Council and the Local to promises to arbitrate. 167 U.S.App.D.C. 86, 511 F.2d 324, 329 (1975).

Should there be any doubt, I hold that Local 5 is bound by the terms of the Standard Agreement negotiated by NEII and The International.

Before continuing this discussion, I shall reiterate what has now become hornbook law concerning the court's role in reviewing labor arbitration awards. As was stated by the Supreme Court in *United Steelwkrs. of A. v. Enterprise W. & C. Corp.*:

> The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards . . . 363 U.S. 593, 80 S.Ct. 1358 at p. 1360, 4 L.Ed.2d 1424 (1960).

> . . . Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. *Id.* at 1361.

> . . . This plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final. This underlines the fundamental error which we have alluded to

in *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343 [4 L.Ed.2d 1403]. As we there emphasized, the question of interpretation of the collective bargaining agreement is a question for the arbitrator. *It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation is different from his."* [Emphasis added] *Id.* at 1362.

With the above guidance from the Supreme Court in mind, I considered Local 5's contention that "The Standard Agreement does not provide for awarding damages by an arbitrator." In fact, the Standard Agreement is silent as to whether or not an arbitrator has the authority, once liability is established, to award damages. Local 5 admits, and numerous cases cited by both the arbitrator and the plaintiffs substantiate, the arbitrator had the power to at least award damages against The International. Local 5 stated in its memorandum in opposition to plaintiffs' and The International's motions for summary judgment and in support of Local 5's cross-motion for summary judgment on page 39:

> Damages may be sought against the International which, after all, is the signatory to the Agreement which has agreed that there will be no strikes. If the International is held liable, then pursuant to its own internal procedures the International may see fit to proceed against the Local for contribution.

The Third Circuit Court of Appeals has propounded the test to be applied by a reviewing court to determine if an award of an arbitration is proper. The court stated:

> [W]e hold that a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by

principles of contract construction and the law of the shop, may a reviewing court disturb the award.[27]

[27] We recognize that this is only one of several possible grounds for vacating an award deemed to be arbitrable. An award may be vacated where it is shown that there was fraud, partiality, or other misconduct on the part of the arbitrator (see, e. g., *Commonwealth Coatings Corp. v. Continental Casualty Co., et al.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); *San Carlo Opera Co. v. Conley*, 72 F.Supp. 825 (D.C.N.Y.1946), aff'd, 163 F.2d 310 (2 Cir. 1947) ); or where the award violates a specific command of some law—usually the National Labor Relations Act (see, e. g., *Glendale Mfg. Co. v. Local No. 520, International Ladies' Garment Workers Union, AFL–CIO*, 283 F.2d 936 (4 Cir. 1960) ); or because the award is too vague and ambiguous for enforcement (see, e. g., *Hanford Atomic Metal Trades Council, AFL–CIO v. General Elec. Co.*, 353 F.2d 302 (9 Cir. 1965) ); or because of inconsistency with public policy (see, e. g., *Black v. Cutter Laboratories*, 43 Cal.2d 788, 798, 278 P.2d 905, 911 (1953). But see *Local 453, International Union of Elec., Radio and Machine Workers v. Otis Elevator Co.*, 314 F.2d 25 (2 Cir. 1963).)

*Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (1969).

■ The Standard Agreement contains a no-strike clause which the arbitrators in each case found to have been violated. It is certainly reasonable to infer, as was found by the arbitrators, that since an alleged breach of the no-strike clause was subject to arbitration, the arbitrator could fashion a remedy in the form of monetary damages once he finds there was a breach. Therefore, I hold that the arbitrators did not exceed their authority when they awarded damages.

Local 5's remaining two reasons for refusing to comply with the awards of the arbitrators are somewhat intertwined and I will therefore discuss them together. Local 5 claims that the Standard Agreement does not provide for awarding damages or any kind of relief against a local union as op-posed to The International and that when it became apparent to all the parties shortly before the scheduled arbitration hearings that there was a conflict of interest between Local 5 and The International, the arbitrators refused to grant Local 5 a con-

tinuance to allow its own attorney time to prepare for the hearing so that he might represent Local 5's interests as opposed to The International's interests. The arbitration clause (Article XV) of the Standard Agreement provides in part:

All differences and disputes regarding the application and construction of this agreement shall be settled locally between the local union and the employer. In the event the matter cannot be settled on a local basis, then either the Union or the Employer shall submit the dispute to a National Arbitration Committee . . Within a period of seven (7) days after receipt of a dispute or grievance by the National Arbitration Committee said Committee shall meet. If the National Arbitration Committee is unable to reach a decision or is deadlocked on the issue then within a period of three (3) days thereafter, the National Arbitration Committee shall submit the unresolved difference or dispute to an Impartial Arbitrator . . . The decision of the Impartial Arbitrator shall be final and binding upon all parties . . .

In each of these cases Local 5 initially attempted with Westinghouse to settle the dispute locally. Upon failure to effect settlement, the cases were then sent to the National Arbitration Committee. When the cases reached this level they were handled by attorneys for NEII and The International. Upon failure of the National Arbitration Committee to resolve the matters, the NEII and The International submitted them to Impartial Arbitrators. The National Arbitration Committee consists of three (3) members appointed by NEII and three (3) members appointed by The International. The Impartial Arbitrator for each case was picked from a panel previously agreed to by both NEII and The International.

As can be easily gleaned from the above, the Standard Agreement does not contemplate any conflicts of interest arising between The International and the Local. The agreement contemplates the Local handling the dispute while it is at the local

level, and when it gets beyond that level, The International assumes responsibility for the defense. The agreement does not contemplate either joint representation (both the Local and The International defending together) or separate representation (the Local and The International being separately represented). Apparently, prior to these two cases, whenever an employer had a grievance he filed it only against the Local union. The employer did not, as was done here, file a complaint against both the Local union and The International. This is what appears to have caused the problems which had caused Local 5 to refuse to abide by the arbitrators' awards.

One of the questions propounded to the arbitrator in each case was: "If the work stoppage was in violation of the Standard Agreement, what, if any, responsibility and/or liability does the international Union and/or Local 5 have for such violation?" When counsel for The International realized, approximately two weeks before the first arbitration hearing, that he might have a conflict of interest as he represented both Local 5 and The International, he advised Local 5 that it should retain its own counsel for the hearing. Local 5 promptly retained its own counsel who immediately sent a letter to the arbitrator picked for the first hearing requesting a continuance. This letter was sent within a week of the scheduled date for the hearing. Rather than respond to the letter, the arbitrator traveled from his home in Tennessee to the hearing site in Philadelphia.

Counsel for Local 5 appeared at the hearing and again requested a continuance. Counsel for The International joined in this request. Counsel for plaintiffs opposed a continuance.

Prior to the taking of any testimony, counsel for Local 5 made a statement and answered a number of questions propounded by the arbitrator. Pursuant to this colloquy counsel for Local 5 made it clear to the arbitrator, and he so found, that if a continuance were granted, Local 5 would still not participate in the arbitration unless and until he was given an equal right along with the plaintiffs and The International to choose the arbitrator. The arbitrator then found that since counsel for Local 5 would not participate even if a continuance were granted, unless Local 5 was given a voice in the selection of the arbitrator, any continuance would be fruitless. Therefore, he denied the request for a continuance and proceeded with the hearing. The same basic process was involved and the same decision was made by the arbitrator in the second hearing.

Local 5 now requests the court to find that "the arbitrators in these cases were guilty of the most arbitrary and unjustifiable misconduct in refusing to grant Local 5 postponement of the respective hearings." (Page 10 of Local 5's Memorandum in Opposition to Plaintiffs' and International's Motions for Summary Judgment.) In support of this request, Local 5 cites Section 10 of the United States Arbitration Act which provides in part:

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration.

\*     \*     \*     \*     \*     \*

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

Local 5 now asserts that if a continuance had been granted, it would have participated in the proceeding after being allowed time to prepare but that it would have reserved its objection to the arbitrator's jurisdiction for another forum. Unfortunately for Local 5, the record indicates that it would not have participated had a continuance been granted. Moreover, each arbitrator made a finding that this was in fact the position taken by Local 5. Further, as my earlier discussion of this court's role concerning review of arbitration proceedings indicates, I am not now at liberty

to review and reverse findings of fact made by the arbitrators. Even if the record should indicate to me, which it does not, that Local 5 would have participated if granted a continuance, I do not have the authority to reverse the findings of the arbitrator. As the Supreme Court stated in *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898:

We think that labor disputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it  .  .  .

.  .  . It would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result. Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

Therefore, I will not reverse the finding of the arbitrators that had they granted continuances Local 5 would still have refused to participate on the grounds that Local 5 was not given a voice in the selection of the respective arbitrators. This was a procedural question which the arbitrators had the authority to decide.

■ This brings us finally to the question: was Local 5 justified in refusing to participate in the arbitration proceedings on the grounds that it was denied fundamental due process by the provisions of the Standard Agreement which provides that the NEII and The International jointly select the arbitrator with the Local having no voice in the selection procedure? On this point I certainly sympathize with Local 5

and the position it has taken, but I believe that under the law I am unable to afford Local 5 the relief it requests.

■ If somebody is going to be bound by an award of an arbitrator he should have a voice in the arbitration proceedings from start to finish. This should include selection of the arbitrator. In support of this belief I cite a decision of the Supreme Court of Wisconsin in a similar case. In the Wisconsin case a union took a position which supported one group of its members to the grave detriment of another group of its members. When the case went to arbitration the second group was not afforded a right to participate. The Supreme Court of Wisconsin, holding that the arbitration award was not binding on the unrepresented group, stated:

.  .  . [W]here the interests of two groups of employees are diametrically opposed to each other and the union espouses the cause of one in the arbitration, it follows as a matter of law that there has been no fair representation of the other group. This is true even though, in choosing the cause of which group to espouse, the union acts completely objectively and with the best of motives. The old adage, that one cannot serve two masters, is particularly applicable to such a situation.

*Clark v. Hein-Werner Corp.*, 8 Wis.2d 264, 99 N.W.2d 132 at 137.

Our cases, however, are distinguishable from the Wisconsin case in two very important respects. First, Local 5 was given an opportunity to participate in the arbitration but refused because it was not given an opportunity to participate in the selection of an arbitrator. Second, Local 5, as discussed earlier in this opinion is a party to the Standard Agreement, and as a party Local 5 agreed to the provision whereby it is not given a voice in the selection of the arbitrator. I say this even though I recognize that this type of Standard Agreement is usually negotiated primarily by an employers' association and an international union. By its ratification of the Standard Agreement, the local union has agreed to

its terms in spite of the fact that the local union may not have had much voice in the formulation of those terms. If Local 5 is dissatisfied with this provision of its agreement, or with any other provision of its agreement, it must work internally through The International to have it amended or deleted when the current contract expires.

It is unfortunate that Local 5 must abide by an agreement made by others, but it must either abide by that agreement or dissociate itself from The International at the proper time. I do not have the authority to alter the provisions of the Standard Agreement, and since I have found that although I believe those provisions clearly reflect which of the respective unions has the louder voice, I must affirm the award of the arbitrators in all respects. The fact that Local 5 was not given a voice in the selection of the arbitrators is not fundamentally violative of due process. If Local 5 had not been granted the right to participate in the arbitration proceedings themselves, for which participation the Standard Agreement does not provide, I may have had to decide that the proceedings were fundamentally unfair.

With regard to damages being assessed against Local 5 alone, and not against The International, it is apparent from the Standard Agreement that this was contemplated in the agreement and therefore the awards of the arbitrators and the remedies fashioned clearly reflect the understanding of the parties when they signed the Standard Agreement. Therefore, I hold that these awards draw their essence from the Standard Agreement and are thereby proper.

Plaintiffs have requested that I not only affirm the awards of the arbitrators but that I also grant them attorneys' fees and costs incurred in connection with these two suits. As I previously discussed, plaintiffs initiated the problems by filing grievances against both the Local and The International. This had not been the previous custom although it is permissible under the Standard Agreement. After a review of all the papers filed in these two lawsuits, it is rather apparent that The International had

nothing to do with the two work stoppages which were found to be illegal by the arbitrators. I might speculate that plaintiffs may have joined The International so that The International might exert its heavy influence upon Local 5 to be more docile in the future rather than out of belief that The International had any responsibility for the work stoppages. Since the confusion was caused by the joinder of The International, although contrary to prior custom and when there was apparently little merit in plaintiffs' cases against The International, I will not exercise my discretion in granting attorneys' fees to plaintiffs. This decision not to grant such fees is buttressed by my previous discussion concerning Local 5's good faith claims, even though I have decided that those claims are not supported by the Standard Agreement. I do not believe that Local 5 has heretofore refused to comply with the awards of the arbitrators out of bad faith or without justification.

For the reasons previously stated, plaintiffs' and The International's motions for summary judgment will be granted, thereby affirming the awards of the arbitrators; Local 5's motion for summary judgment will be denied, and plaintiffs' request for attorneys' fees will be denied. An order will be entered accordingly.