BECHTEL CONSTRUCTION, INC. and
Boston Edison Company, Plaintiffs,

v.

CONSTRUCTION AND GENERAL LA-
BORERS LOCAL UNION NO. 721, and
Louis Palavanchi, Individually and as
Agent of Local Union No. 721, Defend-
ants.

Civ. A. No. 85–2685–C.

United States District Court,
D. Massachusetts.

July 31, 1986.

Glen E. Dawson, Keith H. McCown, Rob-
ert P. Joy, Laurence J. Donoghue, Morgan,
Brown & Joy, Boston, Mass., for Boston
Edison Co.

David M. Pellow, Bond, Schoeneck &
King, Syracuse, N.Y., Thomas J. Grooms,
for plaintiffs.

James A. Toomey, Murphy, Lamere &
Murphy, Braintree, Mass., Robert J. Cana-
van, for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

This is an action for a permanent injunc-
tion and damages brought by Bechtel Con-
struction, Inc. ("Bechtel"), a general con-
struction contractor incorporated in Neva-
da and having its principal place of busi-
ness in San Francisco, California, and Bos-
ton Edison Company,[1] a Massachusetts
public utility with its principal place of
business in Boston, Massachusetts, against
Construction & General Laborers Local Un-
ion No. 721 ("Local 721"), an affiliated local
labor union of the Laborers International
Union of North America ("Laborers' Inter-
national"), and its business manager, Louis
Palavanchi.

Bechtel is the principal contractor for
maintenance, construction, and modifica-

---

**1.** Boston Edison originally was not a party to
this action but was allowed to intervene as a
party plaintiff pursuant to Fed.R.Civ.P. 24. It
has joined in Bechtel's claim for damages under
Section 303 Labor Management Relations Act,
29 U.S.C. § 187 in Count III against Local 721

and its business manager, Louis Palavanchi.
Count III is the subject of the motions now
before the Court only to the extent that the
defendants have moved for summary judgment
on that count with respect to Louis Palavanchi.

tion work at the Pilgrim Nuclear Power Station located in Plymouth, Massachusetts ("Pilgrim Project"). Since Bechtel began working at the Pilgrim Project, it has employed up to 90 members of Local 721 at any one time. Boston Edison owns and operates the Pilgrim Nuclear Power Station. This case arose as the result of a general work stoppage on June 26, 1985 by all of the laborers employed by Bechtel on the Pilgrim Project. It appears from the record that the work stoppage was the result of a jurisdictional dispute between the laborers and carpenters employed by Bechtel. Members of Local 721 walked off the job when Bechtel refused Local 721's demand that Bechtel reassign the cutting and installation of sheets of plywood in a trench being excavated for an electrical duct bank which Bechtel previously had assigned to a carpenters union.

The case came before U.S. District Court Judge Rya Zobel on June 28, 1985 for a hearing on Bechtel's motion for a temporary restraining order. At that hearing the parties stipulated that Local 721's business manager, Louis Palavanchi, would use his best efforts to see that members of Local 721 report to work at the Pilgrim Project through June 30, 1985. The hearing then was continued until July 1, 1985. On July 1, 1985, the hearing was continued until July 2, 1985, and on July 2 the parties stipulated that Local 721, its officers, agents, and representatives would use their best efforts to see that members of Local 721 report to work and refrain from any striking or picketing, and that Louis Palavanchi, business manager of Local 721, and Al Santoro, vice president of Local 721, would affirmatively direct all members of Local 721 to continue to work. Count I of the complaint, in which Bechtel sought injunctive relief, is therefore moot. The only remaining counts in this action are Count II, in which Bechtel seeks damages pursuant to 29 U.S.C. § 185 that Bechtel claims it incurred as a result of the defendants' alleged violation of the collective bargaining agreement Bechtel and the Laborers' International, and Count III, in which Bechtel and Boston Edison seek damages under 29 U.S.C. § 187, contending that the defendants' actions constituted a strike in violation of 29 U.S.C. § 158(B)(4)(i) and (ii)(D). The matter is now before the Court on 1) the defendants' motion for partial summary judgment as to Count II of the amended complaint; 2) the plaintiffs' motion for partial summary judgment as to Count II of the complaint; and 3) the defendants' motion to dismiss or for summary judgment of all counts against the defendant Louis Palavanchi. Each of these motions will be discussed in sequence.

1. *The Defendants' Motion for Partial Summary Judgment as to Count II of the Complaint*

██ The defendants have moved for partial summary judgment as to Count II on the grounds that Local 721 may not be sued for breach of the collective bargaining agreement between Bechtel and the various International Unions representing workers at the Pilgrim Project because it did not sign that agreement. For the following reasons, I rule that although Local 721 did not sign the agreement, there are questions of fact with respect to whether Local 721 is bound by the terms of the agreement, including the provision with respect to work stoppages.

The General Presidents Project Maintenance Agreement ("GPMA") is a national labor agreement developed by the International Unions with members in the building trades. The GPMA is applicable to plant maintenance, repair, and renovation of nuclear power plants. In 1982, at or about the time it was awarded the maintenance construction and modification work at the Pilgrim Project, Bechtel applied to the General Presidents Committee of the International Unions to have the GPMA become effective at the Pilgrim Project. The General Presidents Committee approved the request, and Bechtel and the International Unions with members working at the Pilgrim Project, including the Laborers International, signed the GPMA. Shortly thereafter, at a meeting attended by various of the business agents and representatives of

the local construction unions representing workers in the vicinity of the Pilgrim Project, the Administrator of the GPMA, Thomas H. Owens, advised the local union leaders that the GPMA had been implemented at the Pilgrim Project and that all of the International Unions were bound by its terms. Louis Palavanchi attended the meeting on behalf of Local 721.

In its motion for partial summary judgment, Local 721 now contends that because it did not sign the GPMA it is not bound by its terms. Local 721 further argues that even if under some circumstances local unions could be bound to an agreement that they did not sign, it is clear in this case from an examination of the language of the GPMA that Local 721 was not meant to be bound by the GPMA. A local affiliate of a national labor organization may be bound by the terms of collective bargaining agreement signed by its parent national organization and an employer even though the local affiliate did not sign the agreement. *Blake Construction Co., Inc. v. Laborers' International Union of North America, AFL–CIO*, 511 F.2d 324, 328–330 (D.C.Cir. 1975). *Consolidation Coal Co. v. United Mine Workers of America, Local Union No. 6869*, 362 F.Supp. 1073, 1076 (S.D.W.V. 1973).

In considering whether Local 721 is bound to the terms of the GPMA, it is first necessary to consider whether the parent Laborers' International Union had the power to contract on Local 721's behalf. *Blake*, 511 F.2d at 329. The constitution of the Laborers' International Union authorizes it to enter into contracts with employers and to enforce the observance of those contracts by subordinate bodies and members.[2] Arthur E. Coia, a high ranking officer in the Laborers' International, testified in his deposition that national labor agreements are common in the construction industry and the International has approximately 30 national agreements covering approximately 800 employees nationally. In light of these facts, I rule that the International had the power to bind Local 721 to the GPMA.

The primary question this case raises therefore is whether the International Union actually bound Local 721 to the GPMA in this case. Answering that question requires an examination of the language of the GPMA and any other facts in the record relevant to the intent of the parties. Bechtel contends that because the preamble to the GPMA, unlike the preamble to the agreement in *Blake*, does not say that the International is signing the agreement "for and on behalf of" its affiliated local unions, the GPMA therefore does not bind Local 721. The preamble to the GPMA does not contain "for and on behalf of" language; however, there is an abundance of language in other parts of the GPMA which tends to show that Local 721 was meant to be covered by the agreement. Article I of the GPMA, entitled "Intents and Purposes," provides that "[t]his Agreement ... shall be construed as binding upon and effective in determining the relations between the parties *and/or subordinate subdivisions thereof* signing hereto ...." (emphasis supplied). Moreover, if the GPMA was intended to apply only to the various International Unions that signed it, and not their local affiliates, it would have been unnecessary to specifically refer in particular sections of the GPMA to local unions and their representatives. The GPMA, however, is replete with such references. *See Blake*, 511 F.2d at 330. References to local unions are contained in articles of the GPMA regarding management rights, grievance procedure, wage rates and pay, and, most significantly for purposes of this case, work stoppages.

**2.** Article IX of the constitution, entitled "the General President," Section 12, provides in pertinent part that:

[t]he General President and the General Secretary-Treasurer are jointly vested with authority to enter into National, Regional, and Area agreements with employers or employer associations. The General President .. is vested with full authority to enforce observance of such agreements and to enforce observance of other lawful agreements made by Local Unions and other subordinate bodies; ....

One particular article of the GPMA is exclusively devoted to relations between the contractor and local union representatives. It is apparent from these portions of the GPMA that the agreement was meant to bind local unions at the Pilgrim Project such as Local 721.

Further reason to conclude that the GPMA is binding on Local 721 is that Local 721 has taken advantage of the terms of the GPMA by filing grievances under it. Local 721's business manager, Louis Palavanchi, testified in his deposition that he thought the GPMA applied to members of Local 721. In fact, Palavanchi testified that he personally sent grievances to the International Union to be forwarded to the General Presidents Committee and processed under the GPMA. "[I]t would be totally anomalous to ordinary equity jurisprudence to allow the members of [Local 721] to reap the benefits of [the GPMA] and yet to hold [Local 721] to be beyond an action brought for enforcement of the agreement." *United States Steel Corporation v. United Mine Workers of America,* 77 L.R.R.M. 3134, 3135 (E.D.Ky.1971).

Finally, it would be "manifestly unreasonable" to assume that Bechtel, the Laborers' International, and Local 721 did not contemplate that Local 721 members would be bound by the GPMA. *Blake,* 511 F.2d at 330. If they were not so bound, the agreement would have little or no meaning. If the Court was to accept Bechtel's position, Bechtel would not be bound by the wage, grievance, and other portions of the GPMA that would benefit members of Local 721, and Local 721 would be free to disregard the work stoppage and other provisions of the GPMA that would otherwise restrict its actions in significant ways. For those reasons, I rule that there are questions of fact as to whether Local 721 is covered by the GPMA and, accordingly, the defendants' motion for partial summary judgment as to Count II should be denied.

2. *Plaintiff Bechtel's Motion for Partial Summary Judgment as to Count II*

■ Plaintiff Bechtel has moved for partial summary judgment on Count II, contending that Local 721 is bound to the GPMA, that there are no genuine issues of fact, and that it is therefore entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Hahn v. Sargent,* 523 F.2d 461 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). For the following reasons, I rule that Bechtel's motion should be denied.

Count II alleges that Local 721's officers, agents, members, or representatives breached the no strike provision of the GPMA. A union is only liable for those actions which its agents instigated, supported, ratified or encouraged. *Carbon Fuel Co. v. United Mine Workers of America,* 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). The parties' stipulated facts do not establish that Local 721 violated the no strike provisions of the GPMA. There are no stipulated facts that an agent of Local 721 ordered or encouraged members of Local 721 to stop working at the Pilgrim Project. Significantly, what the parties did stipulate to was that Louis Palavanchi, the business manager of Local 721, agreed to take active steps to stop the strike after it had started. In summary, there remain questions of fact as to whether Local 721 called the work stoppage.

3. *The Defendants' Motion to Dismiss or for Summary Judgment on All Counts Against Louis Palavanchi*

■ Bechtel seeks damages from Louis Pavalanchi, the business manager of Local 721, in Counts II and III under 29 U.S.C. §§ 185 and 187. The defendants moved for dismissal or summary judgment on Counts II and III to the extent that those counts seek monetary damages from Palavanchi on the ground that individuals may not be sued for damages under those sections of the United States Code. Bechtel filed a response stating that it did not oppose the motion. Under those circumstances and in accordance with the Magistrate's recommendation, I rule that insofar as the complaint seeks damages against Palavanchi, it should be dismissed.

Order accordingly.